**In re Hazel Jean KELLY.**

**JIM WALTER HOMES, INC. and John H. Fox, III, as Trustee**

v.

**Hazel Jean KELLY and Archie Kelly and Harold J. Barkley, Jr.**

**Bankruptcy No. 8501668JC.**

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

June 16, 1986.

John H. Fox, III, Jackson, Miss., for plaintiff.

John M. Stevens, Jackson, Miss., for Hazel Jean Kelly, debtor.

OPINION ON "COMPLAINT FOR RELIEF FROM STAY, TO RECLAIM PROPERTY AND TO BAR DEBTOR FROM CLAIMING RIGHT OF REDEMPTION" FILED BY JIM WALTER HOMES, INC. AND JOHN H. FOX, III, AS TRUSTEE

EDWARD ELLINGTON, Bankruptcy Judge.

The Plaintiff, Jim Walter Homes, Inc., (Jim Walter Homes) is the holder of a promissory note which is secured by a deed of trust on a home and approximately one-half (½) acre of land. It is the beneficiary of the deed of trust and the other Plaintiff, John H. Fox, III, is the Trustee of the deed of trust. The Plaintiffs filed a complaint to have the Court direct the Chapter 13 Trustee, Harold J. Barkley, Jr., to abandon any interest he might have in the property; to obtain relief from the automatic stay provided by subparagraphs (3), (4) and (5) of § 362(a) of the Bankruptcy Code; and to be permitted to continue to foreclose on the aforesaid property. A separate Answer was filed by the Debtor, Hazel Jean Kelly, which contained certain affirmative matter. Jim Walter Homes then filed an Answer to the affirmative matter.

No answers or other pleadings were filed by the Defendant, Archie Kelly, or by the Chapter 13 Trustee, Harold J. Barkley, Jr.

In the Complaint Jim Walter Homes claims that it is a creditor of Archie Kelly. It asserts that on December 31, 1977, Archie Kelly purchased the subject property from Mid-State Homes, Inc. (Mid-State) and gave a purchase money deed of trust to Mid-State. Beginning with the monthly payment due on June 5, 1985, the Defendant, Archie Kelly, defaulted on the indebtedness and on September 16, 1985, Mid-State assigned the note and deed of trust to Jim Walter Homes, who then had the trustee of the deed of trust commence foreclosure proceedings. On October 22, 1985, the Defendant, Archie Kelly, executed a quitclaim deed to his sister, Hazel Jean Kelly, who is the debtor in bankruptcy and a defendant herein. The Plaintiff asserts that it did not consent to the transfer of title to Hazel Jean Kelly; that it has not and will not acquiesce or accept Hazel Jean Kelly as a debtor to it; and, that it has no contractual relation with Hazel Jean Kelly. The Plaintiff further asserts that the transfer of title and subsequent filing of bankruptcy was an obvious attempt to circumvent the provisions of the deed of trust.

In her answer the Defendant and Debtor herein, Hazel Jean Kelly, admits most of the factual allegations as to the execution of the various deeds and deeds of trust and the filing of bankruptcy. However, she affirmatively claims that in 1977 she applied to Mid-State to buy the property in question but that an agent of Mid-State told her she could purchase, live in and pay for the property but that the note and deed of trust could not be put in her name "because she was a woman." Mid-State suggested that she secure a male to take legal possession of the subject property, but she was given express permission by Mid-State to reside in said property and to make the monthly payments. She further alleges that Archie Kelly never lived in the property or made any payments on the note. At all times the Plaintiff was aware of the arrangements and accepted her monthly payments for a period of some seven years.

She then asserts she is the legal owner of the subject property and obligor under the promissory note pursuant to the quitclaim deed. Thus, she is entitled to the benefits of the automatic stay provisions of Section 362 of the Bankruptcy Code.

Additionally, she asserts that she filed a Chapter 13 plan whereby the default which exists will be cured pursuant to Section 1322(b)(3) and (5); that the Plaintiff did not file an objection; and that the plan was confirmed on January 3, 1986.

In its answer to the affirmative matter, the Plaintiff denies that the Defendant was told that the creditor would not sell the property to her "because she was a woman"; denies that it gave express permission to Hazel Jean Kelly to live upon the property; and, otherwise denies the material allegations contained in the Defendant's affirmative matter.

In regard to the assertion of the Defendant that the Plaintiff had failed to object to the Chapter 13 plan of the Debtor, the Plaintiff replies that on November 20, 1985, it had filed its complaint for relief from the automatic stay to reclaim property and to bar Debtor from claiming any right of redemption; that such filing constituted an objection in writing to any proposed plan and proof of claim; and, that the filing preceded the due date for objections to the plan. It further alleges that its complaint was a preference filing pursuant to Section 362 and it should have been heard promptly, but that it was delayed by the Court because of a change in Bankruptcy Judges.

## FINDING OF FACTS

By agreement of the parties, no testimony was taken and a written "Stipulation of Fact" and written briefs were submitted by the parties.

Both briefs filed herein contain numerous allegations of "fact" to explain and justify the position of the parties and, if true, give a broader view of the case. However, the Court has endeavored to base its findings solely on the narrative contained in the written "Stipulation of Fact" and the documents attached as exhibits and any matter admitted in the pleadings.

It is not feasible to set forth the "Stipulation of Fact" in this Opinion because it has numerous documents attached to it as exhibits which are necessary to an understanding and determination of the facts but which are too voluminous to be included in their entirety.

The Court finds that in 1975 the Creditor built a house on a one-half (½) acre tract which is the subject of this litigation. This house and property is occupied by the Debtor and her children.

The property was conveyed from Archie Kelly and Robbie Mae Kelly to Andrew Lee Fuller and Stella Mae Fuller by deed dated July 7, 1975; notarized on November 24, 1975; and filed for record on January 9, 1976.

Andrew Lee Fuller and Stella Mae Fuller conveyed the property to Mid-State by deed dated December 17, 1977; notarized January 10, 1978; and filed for record January 24, 1978.

Mid-State conveyed the property to Archie Kelly, Jr., a single man, by deed dated February 2, 1978; notarized February 2, 1978; and filed for record on February 16, 1978. Contemporaneously, Archie Kelly, Jr. executed a purchase money deed of trust to Mid-State dated December 31, 1977; notarized January 6, 1978; and filed for record on February 16, 1978, which was the same date the deed was filed.

Ad valorem taxes have not been paid by the Grantor of the purchase money deed of trust, Archie Kelly, Jr., or anyone in his behalf for several years, but have been paid by the creditor as mortgagee. Insurance payments required of the Grantor by the deed of trust have also been paid by the creditor as mortgagee. Payments upon the indebtedness secured by the deed of trust were paid more or less regularly until June, 1985 when default occurred and no payments have been made upon the mortgage indebtedness since that time.

The deed of trust was assigned by Mid-State to Jim Walter Homes by assignment dated September 16, 1985.

Foreclosure proceedings were instituted by Jim Walter Homes against Archie Kelly, Jr. as defaulting debtor. The foreclosure sale was originally scheduled for October 29, 1985, and the requisite posting of notice of this proposed foreclosure sale was made and publication of notice in a newspaper was made on October 4, 11, 18 and 25, 1985.

The proposed foreclosure sale set for October 29, 1985, was not held and another foreclosure sale was scheduled for November 25, 1985. Again, the requisite posting of notice was made and publication of notice in a newspaper was made on November 1, 8, 15, and 22, 1985. Although it is not stated in the "Stipulation of Fact" apparently it was necessary to schedule a new foreclosure sale because the first foreclosure notice incorrectly described the property as being located in Rankin County, Mississippi when the property is actually located in the Second Judicial District of Hinds County, Mississippi.

In any event, after Jim Walter Homes had instituted the initial foreclosure sale which was scheduled to be held on October 29, 1985, Archie Kelly, Jr. purported to convey the property to Hazel Jean Kelly by a quitclaim deed dated, notarized and filed for record on October 15, 1985. This quitclaim deed contained an erroneous legal description of the property. Archie Kelly, Jr. then executed a second and corrected quitclaim deed to Hazel Jean Kelly dated, notarized and filed for record on October 22, 1985. It is stipulated that the creditor, Jim Walter Homes, did not participate in or consent to the transaction between Archie Kelly, Jr. and Hazel Jean Kelly as depicted by these two quitclaim deeds.

Three days after the execution and filing of the second and corrected quitclaim deed and four days before the date of the first proposed foreclosure set for October 29, 1985, Hazel Jean Kelly filed a petition for relief under Chapter 13 of the U.S. Bankruptcy Code on October 25, 1985. On November 4, 1985, the Debtor filed a proposed plan under Chapter 13. On November 20, 1985, Creditor filed a Complaint for relief

from the automatic stay provision of § 362 of the Code, to reclaim the property and to bar Hazel Jean Kelly from claiming any right of redemption. On December 19, 1985, this Court entered its Order extending the automatic stay and set the matter for preliminary and final hearing on January 28, 1986. On January 3, 1986, this Court entered its Order confirming the Chapter 13 plan filed by the Debtor.

There appears to be no dispute that the Debtor and her children have lived in the house for an extended period of time.

Hazel Jean Kelly claims that the house was purchased for her use and occupancy and she would testify that she has made all of the payments since 1977. She further claims that the title to the property was conveyed to Archie Kelly, Jr. upon the representation to her by an employee of the Creditor that the Creditor did not sell houses to women.

The Creditor denies this claim of the Debtor. In support of its contention that it has no such policy of refusing to sell houses to women, it has submitted a list of twenty-two single women to whom it has sold houses in the last two years.

The sales representative who supposedly was involved with the sale of the house to Archie Kelly, Jr. no longer works for the Creditor; has left the State of Mississippi; and, is unavailable as a witness. Also, no testimony was proffered for Archie Kelly, Jr. There is nothing in the record to substantiate the claim of Hazel Jean Kelly that the Creditor "did not sell houses to women" and therefore this bare assertion is rejected.

Hazel Jean Kelly further asserts that Archie Kelly, Jr. has no interest in the property and has had none since her occupancy in 1977. The creditor asserts that it has no information other than that Archie Kelly, Jr. is and has been title holder.

Robert Griffin is an employee of the Creditor and is assigned to the collection of the mortgage indebtedness involved. In his proffered testimony he testified that he became involved with the transaction in September, 1984. He had been on the premises on many occasions and asked to speak to Archie Kelly. He had been told in response that "He ain't here." He had never been told that Archie Kelly, Jr. did not live there. He did not know the relation between Archie Kelly, Jr. and Hazel Jean Kelly but he assumed that they were husband and wife. He had collected monies on several occasions from Hazel Jean Kelly to apply on Archie Kelly's debt.

In support of Jim Walter Homes' position that Archie Kelly, Jr. had continued to assert his ownership of the property the "Stipulation of Fact" contained as an exhibit a copy of a deed of trust from Archie Kelly, Jr. to Insul-Side, Inc., in the amount of $15,852.48 payable in 84 monthly installments of $188.72 dated October 27, 1984; notarized December 6, 1984 and filed for record December 20, 1984.

Assuming without deciding the correctness of the assertion of Hazel Jean Kelly that she had occupied the dwelling and made the payments on the indebtedness since it was conveyed to Archie Kelly, Jr., the Court finds nothing to support the proposition that the creditor knew or had notice that Hazel Jean Kelly or anyone other than Archie Kelly, Jr. claimed any ownership in the property, either legal or equitable; that the only debtor-creditor relationship that the creditor ever claimed, knew of or acknowledged was with Archie Kelly, Jr; and that the creditor never acquiesced or accepted Hazel Jean Kelly as a debtor.

The Court recognizes that the U.S. Court of Appeals for the Fifth Circuit has specifically held that a Chapter 13 debtor can cure a pre-petition acceleration of a mortgage debt based on a default in payments. *Grubbs v. Houston First American Savings Association*, 730 F.2d 236, 10 C.B.C.2d 549 (1984). See also *In Re Taddeo*, 685 F.2d 24 (2nd Cir.1982).

However, the Court in this case is faced with a problem similar to *In Re Green*, 42 B.R. 308 (Bkrtcy.1984). In that case John C. Dammann had acquired certain property in 1978 with a purchase money mortgage

and loan involving the Arlington Trust Company. The mortgage contained a "due on sale" clause. In 1979 Dammann inquired and was advised the bank did not allow transfers. Sometime between 1979 and 1981 Dammann entered into a written agreement with Steven and Christine Green which provided for purchase of the property by the Greens but under which the deed would not be recorded. Dammann died on January 30, 1983, and the debtors filed their deed on September 30, 1983. The debtors filed their Chapter 13 petition on November 23, 1983. The debtors contended that the automatic stay provisions of the Bankruptcy Code applied and that they should have been allowed to cure their prepetition default in their Chapter 13 plan.

The Bankruptcy Court acknowledged that the Second Circuit and the Fifth Circuit Courts of Appeals had specifically held that a Chapter 13 debtor can cure a pre-petition acceleration of a default in payments, but it then went on to say:

> The problem in the present case, however, is that the mortgagor Dammann is the only party who is in default upon the mortgage debt, and Dammann's estate is not here itself asserting rights to "cure" under the provisions of Chapter 13. While no court apparently has yet passed upon this specific fact situation, the general interpretation of section 1322 of the Bankruptcy Code is to the effect that it has to do with curing of default conditions occurring in a debtor-creditor relationship. *See Taddeo, supra,* at pp. 26–27. *Cf. In Re Andrews,* 15 B.R. 717, 5 C.B.C.2d 955, 957 (D.S.C.1981).

The court accordingly concludes that the actual Chapter 13 debtors in this proceeding, the Greens, as a strict matter of law cannot cure in their Chapter 13 plan the acceleration of the mortgage debt in question as between Arlington and Dammann. Arlington therefore has a right to either immediate payment in full of its mortgage debt, or a right to proceed to foreclose the same free of any restriction

by these Chapter 13 proceedings. Since the debtors admittedly cannot do the former, Arlington is entitled to the latter and should have leave from the automatic stay.

Similarly, in the case at bar, Archie Kelly, Jr. is the only party who is in default on the indebtedness to Jim Walter Homes which is secured by the deed of trust and Archie Kelly, Jr. is not here asserting rights to "cure" under the provisions of Chapter 13.

Likewise, this Court concludes that Hazel Jean Kelly cannot cure in her Chapter 13 plan the pre-petition defaults of Archie Kelly, Jr. and that Jim Walter Homes is entitled to have any defaults under the deed of trust cured or it should be allowed to proceed to foreclose.

The Court now considers the argument of the Debtor that Jim Walter Homes did not file any objection to her proposed Chapter 13 which provided for curing of any pre-petition defaults of the indebtedness between Archie Kelly, Jr. and the creditor; that the Chapter 13 was confirmed on January 3, 1986; and, therefore Jim Walter Homes is now precluded from seeking to have the automatic stay removed.

■ Chapter 13 of the Bankruptcy Code is concerned with the adjustments of debts of an individual with regular income. The whole Chapter presupposes a debtor-creditor relationship.

Section 101(9)(A) of the Code defines creditor, in part, as follows:

(9) "creditor" means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

Section 101(4)(A) of the Code defines a claim, in part, as follows:

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

**514**

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured

. Sections 1321 through 1326 of the Code mandate the debtor to file a plan; provide for the contents of the plan; for a confirmation hearing; that the plan shall be confirmed if all requisite conditions are met; and for payments to and by the trustee.

Section 1327 speaks to the effect of confirmation of the plan. Section 1327(a) specifically provides:

> (a) The provisions of a confirmed plan bind the debtor and each *creditor*, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. (Emphasis added)

Thus, it seems clear that according to Section 1327(a) a confirmed plan is only binding on the creditors of a debtor.

■■■ In the present case, the Court concludes that since no debtor-creditor relationship existed between Hazel Jean Kelly and Jim Walter Homes, then Jim Walter Homes was not and is not bound by any confirmed Chapter 13 plan of Hazel Jean Kelly; that it was not compelled to file any objection to her plan since it would not and could not be affected by it.

## CONCLUSION

For all of the reasons set forth, I find that the automatic stay provided by § 362 of the Bankruptcy Code should be terminated as it applies to Jim Walter Homes and Jim Walter Homes should be allowed to proceed to foreclose. The Court will enter an order terminating any automatic stay with regard to Jim Walter Homes, effective July 15, 1986.

Counsel for Jim Walter Homes shall prepare an order consistent with this Opinion, submit it to counsel opposite for reading and comment, and then submit it to the Court for approval and entry.