**In Re Audrey EVERHART, Debtor.**

**Bankruptcy No. B87–4267.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

June 21, 1988.

---

James G. Corrigan, Cleveland, Ohio, for debtor.

Steven I. Helfgott, Cleveland, Ohio, for movant.

Myron E. Wasserman, Cleveland, Ohio, trustee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter came on for hearing upon the objection to confirmation of the Debtor's plan filed by First Family Mortgage Corporation (First Family). Following an examination of the record, argument of counsel, and a review of the relevant pleadings, the following facts and conclusions were established:

This is a core matter under 28 U.S.C. § 157(b)(2)(L), with jurisdiction further conferred under 28 U.S.C. § 1334 and General Order No. 84 of this District. On or about January 15, 1979, Eva and Arthur Render (Renders), the Debtor's parents, executed and delivered to American Midwest Mortgage their duly recorded mortgage note and deed which constituted a first lien on their residential real property located in Cleveland, Ohio. The note and mortgage were subsequently assigned by American Midwest Mortgage to St. Joseph Bank and Trust Company which, in turn, ultimately assigned same to First Family. It is undisputed that the Renders, in 1979, conveyed their interest in the subject property by quit-claim deed to their daughter, Audrey Everhart (Debtor). It is further unrefuted that the Debtor made payments on the note from January 15, 1979 to January of 1987. During 1987, the Debtor's default on the note resulted in First Family commencing foreclosure proceedings in the State court. To forestall those efforts, the Debtor sought relief by filing her petition under Chapter 13.

In objecting to confirmation of the Debtor's plan, First Family contends as follows: (1) It is not a creditor of the Debtor; (2) It has no claim respecting the Debtor's estate; (3) Debtor's parents never obtained prior written approval of the lender, as required, before conveying their interest in the property to their daughter (Debtor); (4) It has no privity with the Debtor and never has; (5) The debtor never assumed the mortgage and, consequently, has no liability to First Family; (6) Neither it, nor its predecessors, ever accepted the conveyance made to the Debtor; (7) The conveyance to the Debtor was devoid of consideration; (8) The Debtor took the property subject to the mortgage; and (9) Although it received the Debtor's payments on the mortgage from 1979 until 1987, it was obligated to accept her payments since there was no "due on sale" clause contained in the mortgage or security instrument.

In opposition to First Family's objection, the Debtor contends that her plan should be confirmed in view of the following contentions: (1) She made all the mortgage payments on the property virtually since the time her parents executed and delivered their note and deed in January of 1979 until January of 1987; (2) The mortgage payment book has been issued by the lenders in her name throughout that time period; (3) First Family's foreclosure proceeding named her as a party defendant to that action; (4) The lenders accepted all payments made by her; (5) She has paid in excess of $18,000.00 on the original note, which was executed by her parents in the amount of $22,350.00 in January of 1979.

The principal issue for the Court's determination is whether a debtor who lacked privity on a mortgage transaction can cure defaults on the mortgage note within the framework of a Chapter 13 plan? In resolving that issue an examination of the transactional documents is in order.

In an amount of $22,350.00, with interest at 9½% per annum, the Debtor's parents executed their mortgage note (the Note) in

favor of American Midwest Mortgage on January 15, 1979. The Renders and American Mortgage were the only parties in privity on the note. Commencing in March of 1979, monthly payments of $187.96 were due thereon until fully paid. The note, *inter alia*, contains an acceleration clause, and a non-waiver clause. It does not contain a "due on sale" clause. It does, however, contain a "due on default" clause. The note was signed by Arthur L. Render and Eva Render. On the date of its execution the note was assigned to St. Joseph Bank & Trust Company, which later assigned it to First Family. The attendant mortgage deed was duly executed by the Renders and American Midwest on January 15, 1979. By quit-claim deed, the Renders conveyed their interest in the property to their daughter, Audrey McIntyre [Everhart], on May 9, 1979. The record is silent regarding a further conveyance of the subject real property.

■ An examination of the exhibited documents reveals there never existed a legal obligation or liability flowing between the Debtor and First Family or any of First Family's predecessor lenders. As such, First Family was not a creditor of the Debtor as defined in § 101(9) of the Code [11 U.S.C. 101(9)]. Consequently, the case's claims register reflects no proof of claim filed by First Family. Pursuant to § 101(11) of the Code [11 U.S.C. 101(11)], "debt" means liability on a claim. Here, there clearly was no legal liability owed by the Debtor to First Family. Notwithstanding the familial relationship of the Debtor to the original mortgagors, this simply is a situation wherein a third party has received, by quit-claim deed, a conveyance of property which was unauthorized by the mortgagee or its successors in interest. In furtherance of that conveyance, the third party made payments for a substantial number of years before defaulting on the mortgage payments. It is unrefuted that the mortgagees knew of the unauthorized conveyance, as they issued payment coupon books in the name of the Debtor from whom they received payments over an extensive period of time prior to the Debtor's default in 1987. The Debtor suggests that equitable consideration would estop First Family from disregarding her asserted interest in the property based on First Family's past conduct of accepting her mortgage payments over an extended period of time on a note on which she had no legal liability. It is further noted that the Debtor's schedule of secured creditors includes First Family as one of her secured creditors. The amount claimed by Debtor on the debt is listed at $20,797.39, and is further indicated as being "jointly" owed.

■ As proposed, the Debtor's Chapter 13 plan seeks to cure prepetition arrearages through the plan, with current mortgage note payments being made outside the plan. Generally, without an attendant liability on a mortgage note, there can be no cure of a default by a third party who has unilaterally made payments thereon without an assumption of the debt. *In re Kelly*, 67 B.R. 508 (Bankr.S.D.Miss.1986). Herein, there was no debt assumption. First Family, however, continuously looked to the Debtor for payments until it initiated foreclosure proceedings in 1987. The record is silent to reflect where First Family ever challenged or contested the conveyance by its mortgagors, the Renders, to their daughter. Throughout the period of 1979 through 1987, First Family tolerated and accepted payments from the Debtor which totalled some $18,000.00 against the original mortgage amount of $22,350.00.

Although the legal arguments advanced by First Family are apparently plausible, it fails to accord due consideration to the necessary equities of this matter. Bankruptcy courts are courts of equity as well as courts of law. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). To avoid the untoward harsh results which would be visited upon the Debtor if First Family was allowed to escape a debtor-creditor relationship which it had ratified by its conduct, equity consideration should and will be afforded. First Family had knowledge of the transfer of title made by its mortgagors in 1979. First Family and its predecessors in interest issued payment coupons to the Debtor and accepted her monthly payments from 1979 through 1987,

with full knowledge that she had no legal obligation to any mortgagee. Moreover, First Family allowed the Debtor to substantially pay the full amount of its note before contending that it is not a creditor of the Debtor. Such a contention pales in the face of fundamental fairness, and is unacceptable. To sustain an objection to confirmation of a plan, the burden of proof is on the objectant who must meet that burden by clear and convincing evidence. *In re Haas,* 76 B.R. 114 (Bankr.S.D.Ohio 1987). At bar, that burden has not been met.

## CONCLUSION

Accordingly, First Family's objection to confirmation is overruled.

IT IS SO ORDERED.