**In re John WILKINSON and Rebecca Wilkinson Debtors.**

**Bankruptcy No. 1–88–02591.**

United States Bankruptcy Court, N.D. Ohio, W.D.

April 14, 1989.

Brian F. Lautar, Toledo, Ohio, for debtors.

Anthony B. DiSalle, Toledo, Ohio, Trustee.

William M. Gibson, Findlay, Ohio, for the Bank.

OPINION AND ORDER GRANTING MOTION FOR RELIEF FROM STAY

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the court upon First Federal Savings and Loan Association of Columbus and Bexley's, aka Mid–America Federal, motion for relief from automatic stay and Debtors' objection thereto. Additionally, in accordance with the parties' stipulation, this matter will also be treated as an objection on behalf of First Federal Savings and Loan Association to confirmation of Debtors' chapter 13 plan. Upon consideration thereof, the court finds that said motion is well taken and should be granted and said objection is well taken and should be sustained.

FACTS

On August 21, 1978, Francis and Romona Wilkinson, parents of Debtor John Wilkinson, executed and delivered to Mid–America Federal, nka CSL Savings Bank (hereinafter the Bank) a promissory note in the amount of $66,500.00, secured by certain real estate. Statement of Fact at 1 (February 22, 1989). As a result of the deaths of Francis and Romona Wilkinson, Debtor John Wilkinson inherited the subject real estate. *Id.* The transfer to Debtor John

Wilkinson was completed on March 25, 1985. *Id.* Beginning in April, 1985, Debtors John and Rebecca Wilkinson made payments on the mortgage to the Bank. *Id.* at 2.

Debtors continued making payments, although not payments in the full amount, throughout 1987; the Bank accepted them against the mortgage on the real estate. *Id.* On September 22, 1988, the Bank filed its complaint for foreclosure naming Debtors in that state court action as they were the listed title holders to the subject real estate. *Id.* Debtors, on November 4, 1988, filed their voluntary chapter 13 petition, listing the Bank as a creditor having a secured debt on Debtors' residence in the amount of $65,365.14. Chapter 13 Statement at 6 (November 4, 1988). Although a hearing on confirmation of Debtors' chapter 13 plan was held on December 8, 1988, the trustee did not recommend confirmation of Debtors' plan. Statement of Fact at 2.

On November 28, 1988, the Bank filed the instant motion for relief from stay to which Debtors objected. At the hearing held on the Bank's motion, the parties stipulated that Debtors would be granted 30 days, from December 28, 1988, in which to obtain refinancing of the real estate in issue. Stipulation (December 28, 1988). Debtors were unable to obtain financing and, on January 24, 1989, filed a motion to vacate order granting stipulation for relief from stay, for show cause, attorney fees, and request for hearing, to which the Bank responded. As a result of a pretrial conference held on this matter, the parties requested that the Bank's instant motion be also treated as an objection to confirmation of Debtors' plan. Pretrial Order (February 1, 1989).

The Bank asserts that Debtors are not liable to it on the underlying mortgage and that Debtors' chapter 13 petition and plan are inappropriate and should be dismissed. Pretrial Brief of Movant, First Federal Savings and Loan Association of Columbus and Bexley, aka Mid–America Federal at 1 (March 8, 1989). Debtors claim that they are liable on the mortgage, that their chap-

ter 13 plan should be confirmed and that the Bank is equitably estopped from denying Debtors' personal liability. Pretrial Brief of Debtors John Wilkinson and Rebecca Wilkinson at 5 (March 23, 1989).

## DISCUSSION

■ A first issue regarding the Bank's motion concerns Debtors' liability on the mortgage on the real estate. Although Debtors claim that they are liable on the mortgage, the Bank asserts that it has not consented to the transfer resulting from Debtor John Wilkinson's parents. In *In Re Kelly*, 67 B.R. 508 (Bkrtcy.S.D.Miss.1986), Debtor's brother quit-claimed certain real estate to Debtor after the initiation of foreclosure proceedings by the promissory note holder. *Id.* at 510. Debtor, four days prior to the scheduled foreclosure sale, filed her chapter 13 petition and plan listing the promissory note holder as a creditor and attempting to cure any defaults on the promissory note within her plan. *Id.* at 511–12. The *Kelly* court concluded that there exists no Debtor-creditor relationship between the promissory note holder and the chapter 13 Debtor. *Id.* at 513–14. The *Kelly* court, therefore, granted the promissory note holder relief from stay to pursue its foreclosure proceeding. *Id.* at 514. *See also* 69 O.Jur.3d *Mortgages* §§ 532, 539 (1986) (The assumption of a mortgage must be by an express agreement; it cannot be merely implied. The agreement must clearly import that the grantee in fact assumes the payment of the obligation. Additionally, receiving payments on account of the mortgage has been held not to constitute acting upon the assumption agreement, such as will amount to an acceptance of it by the mortgagee.). *But see In re Everhart*, 87 B.R. 35 (Bkrtcy.N.D.Ohio 1988) (In determining whether Debtor who lacked privity on mortgage transaction can cure defaults on the mortgage note within a chapter 13 plan, the court stated that although the mortgagee was not a creditor as defined by the Bankruptcy Code, equitable considerations, including the mortgagee's knowledge of the unauthorized conveyance, the mortgagee's issuance of payment coupon in Debtor's name, and the

mortgagee's receipt of Debtor's payment for seven years, require the court to impose such a relationship between Debtor and the Bank as a result of the Bank's conduct evidencing ratification of the relationship.).

Although Debtors contend that as a result of Debtor John Wilkinson's parents' deaths, and pursuant to O.R.C. § 2117.29, they are personally liable on the mortgage, the court finds that they are not liable on the mortgage. O.R.C. § 2117.29 provides:

> [w]hen the only debts of an estate remaining unpaid are secured by liens on property of the estate, the devisees, legatees, or heirs entitled to receive such property may be permitted to take the same subject to such liens, if all the lienholders consent and waive recourse to all the other assets of the estate in the event such property so taken is insufficient to pay the debts secured by such holders.

Pursuant to this section, the Bank must "consent and waive recourse to all other assets of the estate" before Debtors may be entitled to take the real estate subject to the Bank's mortgage. *See* Statement of Fact at 1. Furthermore, the court finds that there exists no equitable considerations, such as those factors presented in *Everhart, supra,* which would mandate a finding of liability on the mortgage.

Although the exact amount paid by Debtors on the mortgage has not been presented to the court, the parties stipulated that the first payment was made in April, 1985, in the amount of $665.85, and that throughout 1987, monthly payments of $300.00 or more, although less than the full amount, were accepted by the Bank against the mortgage. Statement of Fact at 2. Debtors assert that "these payments amounted to an excess of $20,000". Pretrial Brief of Debtors at 3. (However, copies of cancelled checks attached to Debtors' Motion to Vacate Order Granting Stipulation for Relief from Stay, for Show Cause, Attorney Fees, and Request for Hearing, reflecting payments on the real estate, as well as escrow and court costs, for 1985 through 1988, total $11,258.45.) The Bank also asserts that it "did not know Debtors were making the payments for Francis and Romona Wilkinson until Debtors' attorney so stated in the case at bar." Pretrial Brief of Movant, First Federal Savings and Loan at 5; Response to Debtors' Motion to Vacate Order Granting Stipulation for Relief from Stay at 4 (January 30, 1989). Thus, there does not exist sufficient equitable considerations, requiring a finding of liability.

Debtors claim that the Bank is equitably estopped from denying Debtors' personal liability on the mortgage resulting from the Bank's acceptance of Debtors' payments. Pretrial Brief of Debtors at 2–3. Debtors, to succeed in this assertion, must prove, clearly and unequivocally, that the Bank's conduct amounted to a false representation or concealment of material facts, or, at least, is calculated to convey the impression that the facts are otherwise than and inconsistent with those which the party subsequently attempts to assert; that the Bank intends or expects that its conduct shall be acted upon by the other party; and that the Bank had actual or constructive knowledge of the facts. 42 O.Jur.3d *Estoppel and Waiver* §§ 31, 90 (1983).

Upon review of the record herein, the court finds that Debtors have not carried their burden of proof in establishing equitable estoppel. As previously stated the Bank was without knowledge of the transfer herein. It could not, then, have falsely represented or concealed material facts, expecting Debtors to act upon said representation. Also, the parties stipulated that:

> Early in January of 1989, the Debtors attempted to refinance the debt on their home. Only then did they discover that [the Bank] was listed on their credit report as a creditor, the debt on the house being listed as a personal debt to John Wilkinson, not as a debt of Romona Wilkinson, not as a debt of Romona Wilkinson's estate. The mortgage was not only listed as a debt, but Mr. Wilkinson's delinquency on the debt was evidently reported to the Credit Bureau.

Statement of Fact at 1–2. However, the court is persuaded by the Bank's assertion that this reporting resulted from Debtors' completion of an IRS Form W–9, reflecting mortgage interest and real estate taxes paid on the real estate in question, issued in the name of Francis H. Wilkinson and Romona J. Wilkinson, payers. *See* Response to Debtors' Motion to Vacate Order Granting Stipulation for Relief from Stay and Exhibit A (January 30, 1989). Thus, Debtors' assertion of equitable estoppel is not persuasive.

## FEASIBILITY OF PLAN

■ Notwithstanding the court's finding that Debtors are not personally liable on the mortgage and may not, then, cure the arrearage through Debtors' plan, the court also finds that the Bank's objection to confirmation of Debtors' plan is well taken. The court notes, at this juncture, that the chapter 13 trustee did not recommend confirmation until a determination of liability was made. Statement of Fact at 2.

■ Debtors' proposed five year plan provides for a 100% dividend to unsecured creditors, arrearage of $5,368 to the Bank to be paid through the plan, funded by monthly payments to the chapter 13 trustee of $150.00, and regular mortgage payments as well as other secured creditors, to be paid outside the plan. Chapter 13 Plan (November 4, 1988). Debtors' petition reflects monthly income of $2,268.86. Schedule of Current Income and Current Expenditures for Individual Debtor at 1 (November 4, 1988). Debtors' petition reflects monthly expenditures of $2,070.26. *Id.* at 2. Assuming the accuracy of these amounts, the court finds that Debtors' plan is not feasible. Debtors' monthly income of $2,268.86 does not permit Debtors' monthly expenses of $2,070.26, plus chapter 13 plan funding of $150.00 plus, excluding the Bank's debt, payments to secured creditors outside the plan totalling $10,038.00.

11 U.S.C. § 1325, governing confirmation of Debtors' plan, sets forth six requirements that must be met before a plan may be confirmed. Subsection 6 states that "the court shall confirm a plan if the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). As calculated, Debtors will not be able to comply with the plan and make all payments thereunder. Thus, Debtors' plan should not be confirmed. *See In re Anderson*, 28 B.R. 628, 8 C.B.C. 2d 1016 (S.D.Ohio 1982) (§ 1325(a)(6) means that a reviewing court should confirm a plan only if it appears under all circumstances that the plan has a reasonable likelihood of success); *In re Hogue*, 78 B.R. 867 (Bkrtcy.S.D.Ohio 1987) (Collier notes that the most important criterion for confirmation of a chapter 13 plan is the requirement that the court determine whether the chapter 13 Debtor will be able to make all payments under the plan and comply with all other provisions of the plan); *In re Ashton*, 63 B.R. 244, 15 C.B.C.2d 821 (Bkrtcy.D.N.D.1986) (monthly payments required to cure default and maintain current obligation to bank alone exceeds Debtors' income and plan is incapable of confirmation).

The court also notes that 11 U.S.C. § 1322(c) provides that:

> [t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Debtors' proposed plan seeks payment for 60 months. Before Debtors plan may be confirmed, Debtors must establish "cause" sufficient for a longer period. Debtors have failed to present evidence establishing cause allowing the court to approve their 60 month plan. Furthermore, as previously stated, Debtors' income does not permit confirmation of Debtors' plan, even if the plan period were extended to 60 months.

Finally, the Bank seeks relief from stay in order to pursue its remedies arising from default of the mortgage herein. The court having found that Debtors are not obligated on said mortgage and that no Debtor-creditor relationship exists between Debtors and the Bank, finds that the Bank should be granted relief from stay to pur-

sue its remedies on the real estate in issue. It is therefore

ORDERED that First Federal Savings and Loan Association of Columbus and Bexley's, aka Mid–America Federal, motion for relief from automatic stay be, and it hereby is, granted. It is further

ORDERED that Debtors' plan may not be confirmed. It is further

ORDERED that Debtors' be granted ten days from the date of this order to convert their case to a case under chapter 7; otherwise, it shall be dismissed.