**In re David WRIGHT, Debtor.**

**Bankruptcy No. 94–81697.**

United States Bankruptcy Court,
C.D. Illinois.

June 29, 1995.

William C. Wetzel, Livingston, Barger, Brandt and Schroeder, Bloomington, IL, for Magna Bank.

Gregg N. Grimsley, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for debtor.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court are the two petitions of Magna Bank of Central Illinois (MAGNA) for relief from the automatic stay and its objection to the Debtor's first amended Chapter 12 plan. The stipulated facts underlying this litigation are as follows. In September of 1986, the Debtor's parents, Gerald E. Wright and Jennita A. Wright (WRIGHTS) mortgaged their farm real estate to MAGNA (real estate loan). In June of 1987 the WRIGHTS executed a promissory note and security agreement granting MAGNA a security interest in certain farm machinery and equipment to secure borrowing in the amount of $64,096.53 (personal property loan). Since the conclusion of the 1992 harvest, MAGNA was aware that the WRIGHTS had ceased farming and that the Debtor had assumed responsibility for the farming operation and was going to attempt to pay the creditors of the farming operation through a continuation of the farming operation. MAGNA also knew that for the crop year of 1993 and during the 1994 crop year all of WRIGHTS' interest in the machinery and equipment, and the real estate was to be transferred to the Debtor. In 1993 MAGNA received payments from the Debtor with respect to both loans. At some point in time the bulk of the farm real estate subject to the real estate loan was sold leaving only approximately 3 acres of real estate where a residence is located in which the Debtor resides.

On April 21, 1993, MAGNA filed an action to foreclose the mortgage as to the remaining three acres and residence, naming as defendants the WRIGHTS and the Debtor. In February of 1994 the WRIGHTS and MAGNA entered into a modification agreement which provided the entire amount owing on the personal property loan was to become due on or before April 6, 1994. On May 5, 1994, a judgment of foreclosure and sale was entered. On July 11, 1994, the WRIGHTS deeded the remaining three acres of real estate with the residence to the Debtor and the deed was recorded on July 22, 1994. The regular redemption period in the foreclosure expired on August 6, 1994. On August 19, 1994, the Debtor filed a Chapter 12 case in bankruptcy. On August 29, 1994, without having the automatic stay lifted, MAGNA held the foreclosure sale.

On September 26, 1994, MAGNA filed a petition for relief from the automatic stay so it could conclude the foreclosure action, or in the alternative for an order finding that the Debtor has no interest in the real estate which is the subject of the foreclosure. That petition was opposed by the Debtor and the matter was taken under advisement. While under advisement MAGNA filed a second petition to lift the automatic stay so that it could proceed against the machinery and equipment. The Debtor opposed this petition as well and the Court was advised that a decision on that application could be made when the Court ruled on confirmation of the plan.

On December 19, 1994, the Debtor filed his Chapter 12 plan, to which there were objections, including those filed by MAGNA. At the hearing on the plan and the objections, this Court was advised that the objections had been resolved and an amended plan would be filed. On February 17, 1995, the Debtor filed his first amended plan which proposed the following as to the indebtedness owed MAGNA. As to the real estate loan, the Debtor proposed to pay the principal of $78,000.00 with interest at 9% per annum in monthly installments of $700.00, based on a twenty-year amortization, with a balloon payment due on April 1, 1998. As to the personal property loan, the Debtor proposed to pay the principal of $86,417.99 with interest at 10% per annum with a $25,000.00 payment on May 1, 1995, three annual payments of $20,-000.00 each with the first payment due December 31, 1995, and a final payment of the balance due on December 31, 1998.

MAGNA filed a twofold objection to the first amended plan. The first objection incorporates the allegations of the first petition to lift the stay as to the real estate and asserts that if its petition is allowed it would not be a creditor. The second objection is that the Debtor does not have a debtor/creditor relationship with MAGNA. At the confirmation hearing the Debtor and MAGNA advised the Court that contrary to their pre-

vious representation they had resolved their differences, they were still at odds and a ruling was necessary.

In its first petition for relief from the automatic stay, MAGNA takes the position that the Debtor has no interest in the real estate which could be subject to the bankruptcy estate as he had no title to the real estate as of the date of the filing of the foreclosure and his obtaining of title after that date but prior to sale was insufficient to cause the real estate to be property of the bankruptcy estate. Therefore, the stay should be lifted. It is the Debtor's position that both his possession and his acquiring of title prior to the bankruptcy filing are sufficient interests to bring the real estate into the bankruptcy estate pursuant to § 541 of the Bankruptcy Code. 11 U.S.C. § 541. The Debtor also relies on the fact MAGNA knew of his operation of the farm. Therefore, the stay should not be lifted.

The controlling question in this case is whether there is a debtor/creditor relationship which is subject to Chapter 12 of the Bankruptcy Code. The answer is no. Chapter 12 of the Bankruptcy Code governs what must or what may be included in a Chapter 12 plan and when a Chapter 12 plan is confirmable. Section 1222 provides a Chapter 12 plan may modify the rights of holders of "secured claims". 11 U.S.C. § 1222. Section 1225 provides a plan is confirmable with respect to each allowed "secured claim" if certain conditions are met. 11 U.S.C. § 1225. However, the Bankruptcy Code does not define the term "secured claim." In § 101(10) it defines the term "creditor" to mean an entity that has a "claim against the debtor" and in § 101(5) the term "claim" is defined to mean a "right to payment", or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment". 11 U.S.C. § 101(10) and (5). In § 102(2) it states the term "claim against the debtor" includes "claim against property of the debtor." 11 U.S.C. § 102(2). The legislative history to § 102(2) states:

This paragraph is intended to cover nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor

personally. Thus, such an agreement would give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code. However, it would not entitle the holders of the claim to distribution other than from the property in which the holder has an interest.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 315 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 28 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5814, 6272.

 It is undisputed that there is no agreement between the Debtor and MAGNA concerning these loans. There is no written agreement between the Debtor and MAGNA whereby the Debtor has obligated himself to pay the debt to MAGNA incurred by the WRIGHTS. Nor is there a nonrecourse loan agreement between the Debtor and MAGNA which permits MAGNA to proceed against the Debtor's property, but not against the Debtor personally. It therefore follows that MAGNA is not a creditor under §§ 101(10) and (5) because it has neither a right to payment from the Debtor nor a "claim against property of the debtor" as that term was intended to be applied. When the Debtor obtained title to and possession of the real estate and personal property he did so subject to the mortgage and security agreement, but without any obligation to repay the loans they secured. Nothing in the Bankruptcy Code empowers this Court to impose an agreement on the Debtor and MAGNA, or to permit the Debtor to reorganize a debt that is not his. As there is no agreement between the Debtor and MAGNA, the Debtor cannot be in default, so there is no default to cure under § 1225, nor are there terms of an obligation which the Debtor can modify under that section. Stated another way, as there is no agreement, the Debtor can't cure a default which is not his, on loans which are not his, nor can he modify the terms of the loans to which he is not bound. In the similar case of *In re Mitchell,* unpublished, No. 93–72087 (Bkrtcy.C.D.Ill.) fellow Central District of Illinois Bankruptcy Judge Lessen ruled that as the debtor was not liable on the note and mortgage to the creditor, there was no debtor/creditor relationship between the

debtor and creditor which could be the subject of a Chapter 13 plan, stating:

The Court was presented with a similar factual situation in *In re Page*, No. 89–70398. In *Page*, an insurance company held a mortgage which named as mortgagee a party identified by the Court as Party X. At some point, Party X conveyed his interest in the subject real property to the debtor. The insurance company never accepted the debtor as a liable party on the note or mortgage. The insurance company never accepted payments from the debtor, and always expected payments from Party X. When Party X failed to comply with all the terms of the note and mortgage, the insurance company filed a mortgage foreclosure proceeding. The debtor was named as a defendant in the foreclosure proceeding because the insurance company had learned of an unrecorded installment land contract which named the debtor as the purchaser of the property. The debtor also obtained a quitclaim deed to the property. The debtor filed a petition for relief under Chapter 12 of the Bankruptcy Code, and the foreclosure proceeding was stayed pursuant to 11 U.S.C. § 362. The insurance company moved to lift the automatic stay and the Court allowed the motion. The Court denied the debtor's motion for stay pending appeal, and the debtor appealed the denial of the stay pending appeal to the District Court.

In an Opinion dated December 11, 1989, Judge Mills denied the debtor's motion for a stay pending appeal because the debtor had failed to demonstrate likelihood of prevailing on the merits of the appeal. The District Court found that there was no debtor-creditor relationship between the debtor and the insurance company. Referring to the insurance company as the "Appellee" and the debtor as the "Appellant", Judge Mills stated:

... Party X owes the debt to Appellee, and Appellee is the creditor of Party X. That relationship was created prior to the Appellant entering the picture, and so Appellant's interest is junior to that of the Appellee. Appellee's quarrel is with Party X, and nothing in the Bankruptcy Code can be used to dispute the relationship between Appellee and Party X under these circumstances.

*In re Page*, No. 89–70398, Slip op. at p. 4 (Dec. 11, 1989). Judge Mills further observed that the debtor had "no direct support for his position," and that "his position not only sounds unreasonable, but is apparently unreasonable under the applicable statutory provisions." Slip op. at p. 5.

Judge Mills' holding in *Page* is well supported by the applicable case law. For example, the debtors in *In re Wilkinson*, 99 B.R. 366 (Bankr.N.D.Ohio 1989) inherited property as a result of the death of one of the debtor's parents. Because the debtors were not personally liable on the underlying mortgage taken out by the parents, the Court held that the debtors could not cure the arrearage on the mortgage through their Chapter 13 plan. Therefore, the Court lifted the automatic stay and denied confirmation of the Chapter 13 plan. A similar result was reached in *In re Jones*, 98 B.R. 757 (Bankr.N.D.Ohio 1989) where the Chapter 13 debtor purchased mortgaged property from the mortgagors on a land installment contract. Although the mortgage was assumable, the debtors did not agree to assume the mortgage. Accordingly, the Court found that there was no debtor-creditor relationship between the debtor and the mortgagee, and therefore, the Chapter 13 plan could not provide for cure of the default. *See, In re Kelly*, 67 B.R. 508 (Bankr.S.D.Miss. 1986); *In re Green*, 42 B.R. 308 (Bankr. D.N.H.1984).

■ The Debtor makes two other arguments which need to be addressed. The first is that MAGNA is estopped based on the fact it knew of the Debtor's operation of the farm and its acceptance of payments from Debtor. The Debtor relies on *In re Everhart*, 87 B.R. 35 (Bkrtcy.N.D.Ohio 1988) and *In re McLaughlin*, 96 B.R. 554 (Bkrtcy.E.D.Pa. 1989), cases wherein the debtors had resided in the premises for many years and made the regular mortgage payments. Reaching the result that the debtor could cure the defaults on the mortgage note under her Chapter 13 plan even though she lacked privity on the mortgage, the court in *Everhart* concluded:

Although the legal arguments advanced by [the mortgagee] are apparently plausible, it fails to accord due consideration to the necessary equities of this matter. Bankruptcy courts are courts of equity as well as courts of law. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). To avoid the untoward harsh results which would be visited upon the Debtor if [the mortgagee] was allowed to escape a debtor-creditor relationship which it had ratified by its conduct, equity consideration should and will be afforded. [The mortgagee] had knowledge of the transfer of title made by its mortgagors in 1979. [The mortgagee] and its predecessors in interest issued payment coupons to the Debtor and accepted her monthly payments from 1979 through 1987, with full knowledge that she had no legal obligation to any mortgagee. Moreover, [the mortgagee] allowed the Debtor to substantially pay the full amount of its note before contending that it is not a creditor of the Debtor. Such a contention pales in the face of fundamental fairness, and is unacceptable.

In *In re Jenkins,* Case No. 187–01564 (J. Altenberger, Oct. 24, 1990), this Court discussed the doctrine of equitable estoppel, stating:

The elements necessary to prove equitable estoppel include the five listed below:

1) words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts;

2) the party against whom estoppel is alleged must have had knowledge at the time the representations were made that they were untrue;

3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time the representations were made and at the time that they were acted on by him;

4) the party estopped must intend or reasonably expect that his conduct or representations will be acted upon; and

5) the party claiming the benefit of the estoppel must have in good faith relied upon the representation to his detriment.

*Vaughn v. Speaker,* 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885 (1988).

This matter was presented to the Court on cross-motions for summary judgment and stipulated facts. From those facts it cannot be concluded that MAGNA is estopped. The stipulated facts fail to show there were any misrepresentations made by MAGNA. To the contrary, the introduction to the "narrative" portion of the Debtor's plan indicates creditors opposed Debtor's efforts to refinance or negotiate a repayment plan:

Prior to the 1992 crop year, Debtor farmed with his father. Title to the real estate and most of the equipment was in the name of the father. Some equipment was owned by the Debtor, some debt was incurred by the Debtor. During the year 1992, Gerald Wright left the farming operation [sic] leaving the Debtor with the responsibility of trying to go forward yet retire the substantial indebtedness due on the farm. Since 1992, the Debtor has arranged for the sale of all of Gerald Wright's tillable acres retiring a substantial amount of secured debt and from the 1992 and 1993 crop, retired a substantial amount of other debts of the operation.

In crop year 1994, Debtor farmed in excess of 1,000 rented acres, raised cattle and operated a trucking service. In the summer of 1994, Debtor acquired title to all remaining real estate and equipment from his father subject to the liens of existing creditors. During 1994, Debtor has attempted to refinance or otherwise negotiate a repayment plan acceptable to all the creditors. Debtor was unable to do this and, accordingly, the bankruptcy proceeding was filed.

■ The second argument made by the Debtor is that the sale violated the automatic stay provided by § 362 of the Bankruptcy Code, 11 U.S.C. § 362. A possessory interest is sufficient to invoke the protection of the automatic stay. *In re Atlantic Business and Community Corp.,* 901 F.2d 325 (3d Cir.1990); *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427 (2d Cir.1987). While it is true

the sale occurred after the bankruptcy filing, MAGNA has no claim against the Debtor and the foreclosure action is not attempting to collect any money from the Debtor. MAGNA was merely proceeding against property which the Debtor, for the reasons stated above, could not protect through his Chapter 12 case.

Section 362(d) provides, in part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

11 U.S.C. § 362(d). While a somewhat rare remedy, § 362(d) has been applied to validate a foreclosure sale conducted after the bankruptcy filing where the mortgagee knew of the bankruptcy filing. In *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984), the court of appeals agreed with the bankruptcy court's ruling that the chapter 11 case was not filed in good faith and concluded that in limited circumstances, a bankruptcy court could grant retroactive relief from the automatic stay. The court stated:

In this case, unlike the example from Collier quoted above, appellees were aware of Albany Partners' bankruptcy filing when they conducted the foreclosure sale. Appellant contends that appellees thus acted at their peril, and should not have been granted retroactive relief from the stay. Appellant relies on the case of *In re Eden Associates, supra*, [13 B.R. 578 (Bankr. S.D.N.Y.1981)], in which the bankruptcy court dismissed a Chapter 11 petition upon similar facts, but declined to give effect to a foreclosure sale, conducted after the filing of the bankruptcy petition, where the foreclosing party knew of the filing and of the debtor's claimed interest in the property. 13 B.R. at 585.

We acknowledge that the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay. Even so, we cannot say that the bankruptcy court abused its discretion by granting such relief in this case, particularly in light of the finding that the petition was not filed in good faith. We also find it significant that Albany Partners' asserted interest in the subject property was previously litigated in appellees' possessory action against Ocean View, and was rejected by the Dougherty County Superior Court. Apparently no such prior adjudication of interests was present in the *Eden* case. Considering the close relationship between Ocean View and Albany Partners and the fact that Albany Partners chose not to intervene in the prior action, the bankruptcy court could reasonably hold that appellees were entitled to rely upon the previous judicial determination and to proceed with the foreclosure sale on the assumption that the Ramada Inn was not part of the bankruptcy estate. Accordingly, the bankruptcy court did not err in granting relief in the form of an annulment of the stay *ab initio.*

While the facts of that case are stronger for retroactive relief from the stay than the facts of the present case, those facts justify such relief, because, as previously noted, the Debtor was not entitled to invoke Chapter 12 to protect the real estate, the foreclosure sale did not affect the Debtor's possession of the real estate and MAGNA was not attempting to collect money from the Debtor.

As this Court's ruling that there is no creditor/debtor relationship which is subject to reorganization under Chapter 12 of the Bankruptcy Code is determinative, there is no need to rule on the issue of whether the real estate and personal property are property of the estate. Therefore the automatic stay should be lifted and confirmation denied with the case dismissed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.