*93 OPINION OF THE COURT
Alan D. Oshrin, J.
Plaintiff’s motion for judgment of foreclosure and sale is granted as provided herein.
On May 3, 1988, the defendant, Charles D’Assaro, borrowed the sum of $1,200,000 from the plaintiff, Centerbank, formerly known as The Banking Center. As security for the payment of said note Mr. D’Assaro executed and delivered to the plaintiff a mortgage on property located in Calverton, New York. Mr. D’Assaro failed to make his monthly installment payment on March 1, 1991, and the plaintiff thereafter commenced this foreclosure action.
The plaintiff now moves for a judgment of foreclosure and sale, and in support thereof submits the oath and report of the Referee, as well as the Referee’s computation schedule. Included in such computation schedule are 22 months of late charges totalling approximately $12,972. On March 26, 1993 after its initial review of the motion papers this court contacted the plaintiff requesting that the plaintiff provide justification for its entitlement to late charges for the 22 months; appraisal fees in the total amount of $7,000 and environmental reports in the total amount of $3,700. The plaintiff responded to the court’s inquiries by letter dated April 15, 1993.
The plaintiff contends that it is entitled to all of the late charges requested under an unnumbered provision of the mortgage note which provides: "Without prejudice to any other rights of the holder of this note as provided herein, maker shall pay to the holder of this note a late charge equal to five percent (5%) of any payment of interest or installment of principal and interest due hereunder and, if any, reserve funds required under the mortgage securing this note which is not paid within ten (10) days of the due date thereof to cover the expense resulting from handling such delinquent payment before and after maturity, including accelerated maturity, until this note is fully paid and during the continuance of any default under this note, the mortgage securing this note or any related document beyond any applicable grace period, the interest rate hereunder shall be three (3) percentage points above the then otherwise applicable interest rate.”
There appears to this court to be little case law on the right of a mortgagee to collect late charges in a mortgage foreclosure action. Inasmuch as the amounts requested for late charges in most foreclosure actions are relatively small, it is *94 not typically a contested issue or if contested, not strenuously so (see, 1 Bergman, New York Mortgage Foreclosures § 1.10 [2]). The only New York case the court could find on this subject is Reis v Decker (135 Misc 2d 741 [1987]) which holds that late charges are not recoverable in a mortgage foreclosure proceeding where the mortgagee seeks to recover the full accelerated principal debt. This court notes, however, that the court in Reis failed to set forth the factual basis or the reasoning for its decision. Due to the paucity of New York cases, this court has examined cases from other jurisdictions in making its determination.
Before determining the issue of the plaintiff’s right to late charges, the court must first examine the effect of acceleration. An acceleration clause gives the mortgagee the right to declare the entire mortgage debt due and payable upon the happening of a stated condition (such as the default by the mortgagor in payment of principal and interest) and the right to foreclose the mortgage for nonpayment (George H. Nutman, Inc. v Aetna Bus. Credit, 115 Misc 2d 168 [1982]). Inasmuch as acceleration matures the entire debt, once a mortgagee elects to accelerate, it need not accept anything less than the full accelerated amount. Should a mortgagee accept a lesser amount, such mortgagee is in danger of having waived its right to acceleration and to proceed with the foreclosure action (see, 1 Bergman, New York Mortgage Foreclosures § 4.04 [1], [6]; Security Mut. Life Ins. Co. v Contemporary Real Estate Assocs., 979 F2d 329 [1992]).
The note executed in favor of the plaintiff provides: "Upon default in the payment of any installment of principal and/or interest under this note or of the aforesaid taxes, or any other monies due hereunder, for a period of ten (10) days after the same shall be due and payable * * * then and in every such event, the unpaid balance of this note shall, at the option of the holder hereof, become due and payable on demand.”
For the reasons discussed below this court interprets this language to mean that the plaintiff is entitled to all outstanding amounts which were due as of the date at which the declaration of default and demand was made — the date of service of the summons and complaint — and no other amounts. Upon service of the summons and complaint dated February 28, 1992, on March 3, 1992, the plaintiff indicated its intention to accelerate the mortgage, formally accelerated the payment of the debt and repudiated the right of the defendant to make installment payments (see, City Sts. Realty Corp. v *95 Jay Constr. Enters., 88 AD2d 558 [1982], citing Albertina Realty Co. v Rosbro Realty Corp., 258 NY 472 [1932]; see also, Crest Sav. & Loan Assn. v Mason, 243 NJ Super 646, 581 A2d 120 [1990]). As a consequence of acceleration the defendant had no obligation to make future monthly payments (see, Security Mut. Life Ins. Co. v Contemporary Real Estate Assocs., 979 F2d 329, supra). It has been held to be inconsistent to allow a lending institution to accelerate a note, thereby denying the debtor the right under the mortgage note to make monthly installments and to continue to insist on its own right under the note to impose monthly late charges (see, In re Tavern Motor Inn, 69 Bankr 138 [1987]; Security Mut. Life Ins. Co. v Contemporary Real Estate Assocs., 979 F2d 329, supra). This court is in complete agreement with these holdings and finds that the defendant’s obligation to pay late charges ceased with installments due and payable at the time of service of the summons and complaint.
Notwithstanding language in the late charge provision for "covering] the expense resulting from handling such delinquent payment before and after maturity, including accelerated maturity”, as noted above, once the mortgage debt was accelerated the debtor’s right and obligation to make monthly installments ceased and no payment due after the service of the summons and complaint could be considered "delinquent”. Late charges which accrued prior to acceleration become part of the mortgage debt while late charges for nonpayment of installments claimed to be due after acceleration cannot be collected (see, Crest Sav. & Loan Assn. v Mason, 243 NJ Super 646, 581 A2d 120, supra). Additionally, the court observes that any expense of collecting the debt is fully covered by paragraph R-4 of the rider to the mortgage which provides for attorney’s fees and costs for foreclosure of the mortgage (see, Security Mut. Life Ins. Co. v Contemporary Real Estate Assocs., 979 F2d 329, supra). Moreover, paragraph R-10 of the rider provides for an increase in the interest rate by 3% in the event of default which certainly constitutes full compensation for any loss of use of the funds (see, Security Mut. Life Ins. Co. v Contemporary Real Estate Assocs., supra).
Accordingly, the plaintiff is entitled to late charges for installments which were not paid from March 1, 1991, the date of default, to March 3, 1992, the date of service of the summons and complaint. Using the computations provided by Lynne Bouchein, a commercial loan officer at Centerbank to Sylvia Kolkin Malamud, Esq., the Referee, for late charges in *96 the amount of $615.15 per month for this 12-month period, the plaintiff is entitled the amount of $7,381.80 for late charges.
With respect to the appraisal fees in the amount of $3,500 for the October 1, 1991 appraisal and in the amount of $3,500 for the June 6, 1992 appraisal, the plaintiff explains that the appraisals were necessary to obtain relief from the stay in the bankruptcy of the borrower, Charles D’Assaro, so as to permit the continuation of the foreclosure. The plaintiff argues that such fees are recoverable under paragraph R-4 of the rider which provides for an award of all costs of collection incurred by the mortgagee. The court finds such explanation to be satisfactory and that the plaintiff is awarded $7,000 for the two appraisals.
With respect to the environmental assessments in the amount of $2,400 for the November 26, 1991 report and in the amount of $1,300 for the June 27, 1991 report, the plaintiff explains that the environmental assessments were needed to enforce paragraph R-8 of the rider which concerns representations that there has been no release, discharge or deposit of hazardous substances. The court finds such explanation to be satisfactory and that the plaintiff is awarded $3,700 for the two environmental assessments.