In re Horace **RUTLEDGE**, Sr., Debtor.

**Bankruptcy No. 896–86942–478.**

United States Bankruptcy Court, E.D. New York.

May 15, 1997.

---

Macco Hackeling & Stern, Huntington, NY, for Yasuda Bank & Trust Co.

Horace Rutledge, Westbury, NY, pro se.

DOROTHY EISENBERG, Bankruptcy Judge.

The Court is called upon to decide whether the Bankruptcy Code will permit a Chapter 13 debtor who is not the original mortgagor under a mortgage, and who has not assumed the mortgage, to cure pre-petition arrears and reinstate the mortgage. The issue arose upon the Court's consideration of the motion by Yasuda Bank & Trust Company U.S.A. ("Yasuda"), a secured claimant, to dismiss the Chapter 13 case of Horace Rutledge (the "Debtor") with prejudice or, alternatively, to vacate the automatic stay to permit Yasuda to continue foreclosure proceedings commenced in state court. The Debtor, acting *pro se*, opposed the relief requested by Yasuda.

### BACKGROUND

On October 30, 1996, the Debtor filed a Chapter 13 petition, in part, to effect a pay-out of mortgage arrears owed to Yasuda, as a

mortgagee on residential real property the Debtor owns at 203 Sylvester Street, Westbury, New York (the "Sylvester Street Property"). The mortgage was originally entered into on April 30, 1992 between Delta Funding Corporation ("Delta"), as mortgagee, and Roosevelt Williams, Jr., as mortgagor, to secure Williams' indebtedness to Delta in the principal amount of $54,000. Delta assigned the note and mortgage to Yasuda, and the assignments were recorded on March 19, 1993. Williams defaulted on the mortgage by failing to make the payment due in December 1993 and each and every payment due thereafter, whereupon Yasuda commenced foreclosure proceedings in state court. Unbeknownst to Yasuda, Williams deeded the Sylvester Street Property to the Debtor on July 8, 1994, and the deed was recorded. Yasuda contends that the pre-petition transfer from Williams to the Debtor without the prior written consent of Yasuda violates the mortgage's Due on Transfer Rider. Moreover, Yasuda points out that the Debtor did not assume the mortgage, is not personally liable to Yasuda, and, therefore, there is no privity of contract between Yasuda and the Debtor, consequently, this Debtor's plan may not provide for curing the defaulted mortgage. Yasuda seeks dismissal of the case or relief from the stay, on the theory that the Debtor's filing of a chapter 13 case does not modify Yasuda's rights under New York law vis-a-vis the Sylvester Street Property, in the absence of privity of contract. This Court disagrees.

### FACTS

The facts relevant to this controversy are not in dispute and are as follows:

1. Yasuda is the holder, by assignment, of a note and mortgage, dated April 30, 1992, which is secured by the Sylvester Street Property.

2. The Yasuda mortgage constitutes a first lien against the Sylvester Street Property.[1]

3. The Yasuda mortgage was signed by Roosevelt Williams, Jr., as Administrator of

---

1. There is also a second mortgage encumbering the Sylvester Street Property, which was entered into on December 15, 1993 between Roosevelt Williams, Jr., as mortgagor, and Ronny Jankeloff, as mortgagee, in the original principal amount of $25,000.00.

the Estate of Mildred L. Williams, deceased, and not by the Debtor.

4. The Debtor who is a relative of the mortgagor, acquired the Sylvester Street Property from Roosevelt Williams, Jr., the original mortgagor, by deed dated July 8, 1994, and recorded in the Nassau County Clerk's Office at Liber No. 10444 at Page 594.

5. The Sylvester Street Property is not the Debtor's principal residence.

6. By its terms, the Yasuda mortgage precluded the transfer of title by Roosevelt Williams, Jr. without the mortgagee's prior written consent.[2]

7. The required consent was never requested or obtained from Yasuda or its predecessor-in-interest prior to the transfer of title to the Debtor.[3]

8. Yasuda commenced a foreclosure proceeding in state court based on Williams' default in making the monthly payments due under the mortgage. In connection with filing the foreclosure action, a title search was performed and Yasuda learned that the Sylvester Street Property had been transferred to the Debtor.

9. The Debtor filed this Chapter 13 case, *pro se*, on October 30, 1996, claiming an ownership interest in the Sylvester Street Property on Schedule A.

10. The filing of the Debtor's Chapter 13 case stayed the foreclosure proceeding commenced by Yasuda in state court.

11. The Debtor has not assumed the Yasuda mortgage.

12. There is no privity of contract between Yasuda and the Debtor.

13. On December 16, 1996, Yasuda filed a proof of claim in this case, evidencing its secured claim in the amount of $114,604.23, and arrears of $62,842.20 as of the date of filing of this chapter 13 case.

14. The Debtor claims to have sufficient income to cure the default and maintain post-petition mortgage payments.

15. The Debtor's plan contemplates, among other things, the payment of pre-petition arrears to Yasuda over 60 months,[4] as well as the payment of post-petition mortgage payments as they become due.

## DISCUSSION

▪ Property rights are determined by state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Clearly, New York law permits a secured creditor to accelerate the entire indebtedness owed under a mortgage in the event of a mortgagor's default for nonpayment of monthly installments and, if the entire accelerated amount is not forthcoming, permits the secured creditor to institute foreclosure. *Centerbank v. D'Assaro*, 158 Misc.2d 92, 600 N.Y.S.2d 1015 (N.Y. Sup.Ct., Suffolk Co., 1993); *George H. Nutman, Inc. v. Aetna Business Credit, Inc.*, 115 Misc.2d 168, 453 N.Y.S.2d 586 (N.Y. Sup.Ct., Queens Co., 1982); *In re Kizelnik*, 190 B.R. 171, 176 (Bankr.S.D.N.Y.1995). The loan documents in this case, which give the lender the right to accelerate the entire indebtedness if there is a default, or if the collateral is transferred are quite typical, and state law will enforce the lender's right to foreclose if the indebtedness is not then paid in full. *Centerbank*, 158 Misc.2d at 93, 600 N.Y.S.2d at 1016; *George H. Nutman, Inc.*, 115 Misc.2d 168–69, 453

---

**2.** The Due on Transfer Rider to the Yasuda mortgage provides, in pertinent part, that "if all or any part of the Property ... is sold or transferred by Borrower ... without Lender's prior written consent, ... Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable." Due on Transfer Rider, Para. 32.

**3.** It is unclear from the documentary evidence before the Court whether Yasuda actually declared a default based upon the transfer by Williams to the Debtor, in violation of the Due on Transfer Rider. The point is moot, however, since, prior to the transfer, Yasuda had already declared a default for non-payment by Williams of monthly mortgage installments.

**4.** The Court notes that the Debtor's plan provides for monthly payments toward the Yasuda mortgage in the amount of $350.00. Assuming the life of the plan is 60 months, the Debtor's proposed monthly payments will not satisfy Yasuda's claim for pre-petition arrears in the amount of $62,842.20. Consequently, it appears that an issue will arise on confirmation regarding the feasibility of the Debtor's plan.

N.Y.S.2d at 586–87. Accordingly, when Williams defaulted in the payment of monthly installments under the mortgage, Yasuda accelerated the loan and, when Williams did not satisfy the entire indebtedness, commenced foreclosure proceedings in state court. Had Williams then filed a bankruptcy petition, notwithstanding contrary state law, there is no question but that the foreclosure proceedings would be stayed by operation of Section 362(a) of the Bankruptcy Code and Williams, as the mortgagor of the Sylvester Street Property, would have the ability, through the plan, to cure the arrears and reinstate the mortgage. *DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir.1982).

■ Notwithstanding the foregoing, Yasuda argues that this Debtor is not entitled to use his Chapter 13 case to thwart Yasuda's state court foreclosure proceeding because the Debtor is not the original borrower, there is no privity of contract between the Debtor and Yasuda, and there is no debtor-creditor relationship between the Debtor and Yasuda. At first blush, Yasuda's argument seems compelling because it reiterates time-honored state law rights, obligations and remedies. However, the Bankruptcy Code supersedes state law property rights. *DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir.1982). In *Taddeo*, the Second Circuit specifically stated:

> To permit, for Chapter 13 purposes, the variations of the laws of the different states to govern the effect of an acceleration and its curability, would be to defeat one of Congress's important purposes, in exercising its pre-emptive bankruptcy powers under the federal constitution, to provide by Chapter 13 a uniform national remedy by which to adjust the debts of individuals with regular incomes as an alternative to their being forced to undergo liquidating bankruptcy.... We do not believe that Congress labored for five years over this controversial question only to remit consumer debtors—intended to be primary beneficiaries of the new Code—to the harsher mercies of state law.

*Taddeo*, 685 F.2d at 25. *See also Grubbs v. Houston First American Savings Assoc. (In re Grubbs)*, 730 F.2d 236 (5th Cir.1984).

Therefore, the question before the Court is whether the Bankruptcy Code, which preempts New York real property law, also permits a Chapter 13 debtor who is not in contractual privity with the mortgage holder to cure a default and decelerate a mortgage.

The Court's research reveals that bankruptcy courts are split on this issue. *In re Allston*, 206 B.R. 297 (Bankr.E.D.N.Y.1997) (debtors owned property as to which mortgagee held lien and such property was estate property; thus, mortgagee held "claim" against debtors' estate, even though no privity of contract existed between mortgagee and debtors, and debtors could repay that "claim" as part of their Chapter 13 plan); *In re Hutcherson*, 186 B.R. 546 (Bankr.N.D.Ga. 1995) (by virtue of transfer of ownership from the mortgagor-mother to the debtor-daughter, the mortgagee did hold a "claim" against the debtor-daughter's estate in bankruptcy, even though no privity of contract ever existed between mortgagee and debtor); *Matter of Lumpkin*, 144 B.R. 240 (Bankr. D.Conn.1992) (even though Chapter 13 debtor acquired the property from her mother without assuming mortgage, the in rem "claim" of the mortgagee was a "claim" subject to inclusion in a Chapter 13 plan).

Other cases are contrary. *In re Everhart*, 87 B.R. 35 (Bankr.N.D.Ohio 1988) (generally, without an attendant liability on a mortgage note, there can be no cure of a default by a third party who has made payments thereon without an assumption of the mortgage; but, under unique factual circumstances presented, equity required that the Chapter 13 debtor be allowed to cure the defaults on the mortgage note even though she lacked privity on the mortgage); *In re Kizelnik*, 190 B.R. 171 (Bankr.S.D.N.Y.1995) (mortgagor's granddaughter did not have standing, in her capacity as tenant on mortgaged property with alleged option to purchase, to intervene in dispute between her grandfather and the mortgagee, to decelerate long-defaulted mortgage loan and to invoke automatic stay to prevent mortgagee from foreclosing); *In re Mitchell*, 184 B.R. 757 (Bankr.C.D.Ill.1994) (in granting mortgagee's motion to lift the automatic stay in order to foreclose on property mortgaged by third party but owned

and occupied by Chapter 13 debtor, the court found no compelling equitable considerations which would mandate the imposition of a debtor-creditor relationship upon the debtor and the mortgagee); *In re Threats,* 159 B.R. 241 (Bankr.N.D.Ill.1993) (debtors who had obtained residential property from the original mortgagors without adhering to a due-on-sale clause were not permitted to cure defaults through a Chapter 13 plan); *In re Wilkinson,* 99 B.R. 366 (Bankr.N.D.Ohio 1989) (debtors could not cure the arrearage on mortgage through their Chapter 13 plan because the debtors were not personally liable on the underlying mortgage taken out by the parent); *In re Jones,* 98 B.R. 757 (Bankr. N.D.Ohio 1989) (debtor's plan may not provide for the curing of a mortgage default because there exists no creditor-debtor relationship between the mortgagee and the debtor, who is not liable on the mortgage); *In re Taylor,* 96 B.R. 584 (Bankr.E.D.Pa. 1989) (in the context of a Section 506(a) proceeding to reduce the secured portion of mortgagee's claim, the court doubted whether a unilateral transaction between a grantor-mortgagor and a grantee-debtor can bind the mortgagee to accept the grantee-debtor as the mortgagor); *In re Kelly,* 67 B.R. 508 (Bankr.S.D.Miss.1986) (original borrower's transferee could not cure original borrower's default through Chapter 13 plan, since there was no debtor-creditor relationship between Chapter 13 debtor and the mortgagee).

■ After due consideration, this Court believes that the Supreme Court's decision in *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) mandates a decision by this Court permitting a Chapter 13 debtor who is the owner of real property to cure a pre-petition default under a mortgage, even if that debtor lacks privity with the mortgagee.

*Johnson* was a classic "Chapter 20" situation, where the Supreme Court was presented with the issue of whether a debtor who was relieved of all personal liability under his mortgage by the discharge in his Chapter 7 case could cure the arrears owing under the mortgage through the reorganization plan in his subsequent Chapter 13 case. In determining that issue, the Supreme Court was

required to decide whether the mortgagee held a "claim" in the Chapter 13 case, even though it had no right of recovery against the debtor personally. The Court found that "a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the meaning of [Section] 105(5)." *Johnson,* 501 U.S. at 84, 111 S.Ct. at 2155, 115 L.Ed.2d at 75. After pointing out that the discharge extinguished only the *in personam* action against the debtor but not the *in rem* action, the Court noted that "[Section] 502(b)(1) contemplates circumstances ... which ... may consist of nothing more than an obligation enforceable against the debtor's property" and that "[Section] 102(2) establishes, as a '[r]ul[e] of construction,' that the phrase '"claim against the debtor" includes claim against property of the debtor.'" *Johnson,* 501 U.S. at 85, 111 S.Ct. at 2155, 115 L.Ed.2d at 75. Consequently, that Court concluded that the mortgage that survived the Chapter 7 discharge of the debtor's personal liability had to be dealt with as a claim against property of the estate in the same debtor's subsequent Chapter 13 plan.

■ After a careful reading of the decisions of the bankruptcy courts that have dealt with this issue, this Court is persuaded by, and agrees with, the decisions that have followed the reasoning in *Johnson* and applied it to situations in which a transferee-debtor who is not the original obligor under a mortgage, and who is without any personal liability under the mortgage, may still treat the claim of the mortgage arrears in a Chapter 13 plan. *See, e.g., In re Allston,* 206 B.R. 297 (Bankr.E.D.N.Y.1997); *In re Hutcherson,* 186 B.R. 546 (Bankr.N.D.Ga.1995).

The issue in *Allston* is identical to the issue before this Court; i.e., whether the Debtor can cure a prepetition default under the mortgage although there is no privity with Yasuda. The *Allston* Court held that the debtors could repay the mortgage lien, even though no privity of contract ever existed with the mortgagor, reasoning that (i) the debtors own the property as to which Republic holds a lien; (ii) the property is "property of the estate;" and (iii) it therefore follows that Republic holds a "claim" against the

debtors within the meaning of Sections 102(2) and 502(b)(1) of the Bankruptcy Code, to the extent that Republic asserts a claim against the property. *See also In re Hutcherson,* 186 B.R. at 551 (the holder of the mortgage actually holds a claim against the debtor's estate in bankruptcy, even though no privity of contract ever existed between it and the debtor; as such, the debtor may modify the mortgagee's rights as part of his reorganization plan).

In the case at bar, the Debtor owns the Sylvester Street Property as to which Yasuda holds a lien. The Sylvester Street Property is "property of the estate" under Section 541(a) of the Bankruptcy Code. Therefore, it follows that Yasuda holds a "claim" against the Debtor within the meaning of Sections 102(2) and 502(b)(1) of the Bankruptcy Code, to the extent that Yasuda asserts a claim against the Sylvester Street Property. In fact, Yasuda filed a proof of claim in this case on December 16, 1996, asserting a secured claim against the Debtor's estate in the amount of $114,604.23 and $62,842.20 in arrears. Consequently, this Court holds that the Debtor may seek to repay the claim for the arrears owing to Republic as part of his Chapter 13 plan.

With respect to post-*Johnson* cases, one bankruptcy court in this circuit which came to a different conclusion regarding this issue did so because the facts before it were distinguishable. *See In re Kizelnik,* 190 B.R. 171 (Bankr.S.D.N.Y.1995) (holding that the debtor did not have standing, in her capacity as tenant on mortgaged property, to invoke the automatic stay to prevent a mortgagee from foreclosing, when debtor was not the mortgagor, did not own the property in which the bank had a secured interest, and had no personal liability on the secured indebtedness). Since the debtor in *Kizelnik* did not own the property and the bank, therefore, did not have a "claim" against property of the debtor's estate, the situation is clearly distinguishable.

The Court notes, however, that there remains an outstanding issue as to whether the Debtor's Chapter 13 plan has been proposed in good faith. In this connection, the Debtor will have to demonstrate at the hearing on confirmation that he has the ability to make all the payments required to be made under the plan, as well as the ability to remain current with all of his post-petition obligations. If Yasuda believes that it has evidence to support a finding that this is a bad faith filing and/or that the Debtor cannot fulfill the duties required of a Chapter 13 debtor, then it may file an objection to confirmation of the plan pursuant to Section 1325(b) of the Bankruptcy Code which will be decided by this Court.

### CONCLUSION

1. This Court has jurisdiction over the parties and the subject matter, which is a core proceeding, pursuant to 28 U.S.C. Section 157(b)(2)(G).

2. Yasuda holds a "claim" within the meaning of Section 1322(b)(2), (5) and (6) against the Debtor's estate, even though no privity of contract exists between the Debtor and Yasuda.

3. Debtor may repay Yasuda's "claim" through his reorganization plan.

4. The issue of whether the Debtor's reorganization plan is feasible under Section 1325(a) is not before the Court and, therefore, is not ripe for decision at this time.

5. Yasuda has not demonstrated cause to lift the automatic stay under Section 362(d) of the Bankruptcy Code merely by showing that the Sylvester Street Property was transferred to the Debtor in violation of the mortgage's Due on Transfer Rider. Therefore, Yasuda's motion for an Order vacating the automatic stay is denied.