(February 1, 2001)

■ K.I.D.E. ASSOCIATES, LTD., Appellant, v GARAGE ESTATES COMPANY et al., Respondents. [720 NYS2d 114] —Amended judgment, Supreme Court, New York County (Emily Goodman, J.), entered March 10, 2000, confirming the report of Judicial Hearing Officer Bernard H. Jackson, which, among other things, rescinded the lease between the parties and directed plaintiff to pay defendant unpaid rent, late fees, reasonable attorney's fees and court costs, unanimously modified, on the law and facts, to vacate the grant of rescission, and dismiss plaintiff's fourth cause of action, and otherwise affirmed, without costs.

Morton Kirschbaum, president of plaintiff K.I.D.E. Associates, LTD. (KIDE), is an entrepreneur with substantial experience in the garage business. In the late spring or early summer of 1992, Kirschbaum noticed, in the New York Times, an advertisement for the rental of the garage in dispute, located at 404-414 West 155th Street. Hoping to add the advertised garage to his holdings, which included ownership of 15 to 20 garages, Kirschbaum immediately contacted Gerald Leiblich, a licensed real estate broker whose name appeared in the advertisement. Leiblich knew from Deborah Kooperstein, a partner of defendant Garage Estates Company and Garage Estates, Inc., that the monthly rental value was approximately $20,000, which he told Kirschbaum, who then attempted to inspect the property. However, a holdover tenant, whom Kooperstein was trying to evict, refused access to Kirschbaum and his representatives as well as Kooperstein and Leiblich. Once, when Kirschbaum attempted to enter the garage as a patron, he was turned back about 10 feet after entering. Nevertheless, on September 17, 1992, Kirschbaum, on behalf of KIDE, and Kooperstein, on behalf of Garage Estates, entered into a lease agreement concerning the garage. Although Kirschbaum had

his lawyer review the lease and had some time to review it himself, he made no requests to change the terms of the lease. The lease provides for rent of $20,833.33 per month with annual three percent increases, totaling some $4,500,000 over 15 years. A provision requiring KIDE to pay a late charge of five percent per month on the amount overdue is also included. Under the lease KIDE agrees to take the property "as is" and that Garage Estates is not responsible for any repairs or maintenance whether structural or nonstructural. Moreover, the lease contains a merger clause.

Upon eviction of the holdover tenant in December 1992 by Kooperstein, three months after the execution of the lease, KIDE took possession of the garage. Kirschbaum, who was in Florida at the time, inspected the garage in February 1993. Among other things, he noticed damage to the roof, the existence of a repair shop, and an illegal discotheque.

Kirschbaum claims that before signing the lease Kooperstein had told him that it was in good condition and that she would take care of any damage found after evicting the holdover tenant. Kirschbaum claims that after KIDE took possession, Kooperstein again promised orally to take care of whatever needed to be done to the building. Kooperstein denies making these statements.

When KIDE stopped paying rent in February 1994, Garage Estates commenced a summary proceeding for non-payment. KIDE then commenced this action against Garage Estates seeking declaratory relief, reformation of the lease, rescission of the lease, and money damages. In August 1996, Garage Estates moved for summary judgment or dismissal of the complaint based on KIDE's alleged failure to comply with discovery demands. KIDE cross-moved, and the IAS Court referred the case to the Judicial Hearing Officer (JHO) for all purposes. The JHO presided over seven hearing sessions from May 20, 1997 to September 17, 1998. On January 22, 1999, the JHO issued his report, finding, among other things that: (1) KIDE and Garage Estates were in agreement that the lease should be rescinded; (2) reformation of the lease was not warranted because there were no misrepresentations by Garage Estates and no mutual mistake; and (3) the late fee set forth in the lease was not excessive or against public policy. By Amended Judgment dated August 16, 1999 and filed March 10, 2000, the IAS Court confirmed the JHO's report in its entirety.

On appeal KIDE argues that (1) it never agreed to rescission without also an award of damages; (2) the lease should be reformed; and (3) the late fee is unconscionable and thus

unenforceable. Although we agree with KIDE that it did not consent to rescission without an award of damages, we affirm, nevertheless, the denial of the claims seeking reformation, restitution, and declaratory judgment that the late charge is unconscionable.

It is well settled that on a nonjury trial "the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses [citations omitted]" (*Ashland Mgt. v Janien*, 190 AD2d 591, *affd* 82 NY2d 395 [internal quotations omitted]).

Reformation may be an appropriate remedy, despite a merger clause, in the case of mutual mistake or fraud. Mutual mistake occurs when a signed writing does not accurately express the agreement of the parties. To rebut the " 'heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties' " a proponent of reformation must " 'show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.' " (*Chimart Assocs. v Paul*, 66 NY2d 570, 574 [citations omitted].) This is particularly true where the negotiations were conducted by sophisticated, counseled people (*see, Briand Parenteau Assocs. v HMC Assocs.*, 225 AD2d 874, 876).

It is undisputed that the lease in this case was clear and unambiguous and that Kirschbaum is a sophisticated, counseled business person.

As to mutual mistake, KIDE does not overcome the applicable heavy presumption. To establish the existence of a mutual mistake, KIDE must prove that both parties intended for the lease to include the alleged oral agreement, i.e., that the garage would be in good condition, and, if it was not, Kooperstein would repair any damage. The alleged oral agreement is in direct contradiction to the actual language of the lease, which provides, among other things, that KIDE took the premises "as is"; that taking possession is evidence that the premises were in good and satisfactory condition except as to latent defects; and that Garage Estates is not responsible for any repairs or maintenance in the building, structural or non-structural. Kooperstein denied making the alleged statements and has argued that the lease expresses the true intention of both parties. KIDE did not offer any evidence suggesting any mistaken belief on the part of Garage Estates, a necessity for a finding of

mutual mistake (*Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 219 [holding that "the unilateral mistake of (defendant) would not suffice to invoke reformation (citations omitted)"]).

The JHO's determination that there was no mutual mistake or fraud is completely supported by the evidence before him.

The JHO's finding that the late charge of five percent per month was not unconscionable was correct, given that this case involves a commercial lease negotiated by sophisticated business people and that KIDE submitted no evidence suggesting that the late charge was unreasonable or against public policy in this situation (*see, State of New York v Wolowitz*, 96 AD2d 47, 68-69 [the determination as to conscionability must be decided on the facts of each case]).

However, the JHO's determination that the parties agreed at the hearing to rescind the lease is not supported by the record. The record shows that KIDE's consent to rescission was conditioned on an award of damages including, *inter alia*, reimbursement for funds expended to repair the garage. Garage Estates, on the other hand, agreed to rescission without the award of any damages to KIDE. Thus, the parties did not agree because of the significant and material differences between their proposals for rescission. In the absence of an agreement or stipulation, there was no evidence presented to warrant rescission. Concur—Sullivan, P. J., Rosenberger, Andrias, Lerner and Friedman, JJ.