2006 OK CIV APP 91

**LASALLE BANK NATIONAL ASSOCIATION, a National Banking Association, as Trustee for the Certificate Holders of CDC Securitization Corporation, Multi-class Pass–Through Certificates, Series 1999–FL1, Plaintiff/Appellant,**

v.

**SHEPHERD MALL PARTNERS, L.L.C., Defendant/Appellee.**

No. 101,582.

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 10, 2005.

Rehearing Denied Dec. 7, 2005.

Certiorari Denied April 17, 2006.

Dallas E. Ferguson, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, OK, for Appellant.

Bart A. Boren, Williams, Boren & Associates, P.C., Oklahoma City, OK, for Appellee.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant LaSalle Bank National Association (LaSalle), as Trustee for the Certificate Holders of CDC Securitization Corporation ("CDC"), seeks review of the trial court's order granting the motion for summary judgment of Defendant/Appellee Shepherd Mall Partners, L.L.C. (Shepherd Mall). LaSalle contends the trial court erred in ruling late fees were, as a matter of law, an unenforceable penalty. After a review of the record, we affirm the order of the trial court.

¶ 2 In October 1999, Shepherd Mall signed a note, mortgage and corresponding documents to obtain a maximum loan of $30,000,000.00. In April 2003, when the principal balance was $27,500,000.00, the loan was declared to be in default.[1] The maturity date of the loan was accelerated, payment in full was demanded, a higher "default" interest rate was charged, and a late fee on the full amount due *after* default was assessed.

¶ 3 In June 2003, LaSalle petitioned for Foreclosure against Shepherd Mall, alleging Shepherd Mall owed the principal balance, default interest of $556,378.48 and a $1,375,000.00 late fee. Shepherd Mall filed a Cross–Petition alleging that assessing the late fee on the entire principal balance constituted an unenforceable penalty.

---

1. Although CDC made the loan agreement with Shepherd Mall, it assigned the note and mortgage to LaSalle.

¶ 4 In August 2003, the parties entered a Stipulation and Agreement under which Shepherd Mall paid LaSalle $29,730,283.68 as follows:

| | |
|---|---|
| $27,500,000.00 | Principal due |
| 556,378.48 | Default interest |
| 1,375,000.00 | Late fee |
| 275,000.00 | Exit fee |
| 154.20 | Interest on advances |
| 900.00 | Title fee |
| 22,851.00 | Attorneys fees and expenses |

¶ 5 Shepherd Mall paid the late fee "under protest." LaSalle dismissed its claims with prejudice and both parties sought summary judgment on Shepherd Mall's Cross–Petition. The trial court granted summary judgment to Shepherd Mall, requiring LaSalle to "refund" the late fee.

¶ 6 An order granting summary judgment is "appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.* "[O]ur standard of review of a trial court's grant of summary judgment is *de novo.*" *Wathor v. Mutual Assurance Administrators, Inc.,* 2004 OK 2, ¶ 4, 87 P.3d 559, 561. The ultimate decision in a summary judgment ruling, is a "legal determination of whether one party is entitled to judgment as a matter of law ..." *Head v. McCracken,* 2004 OK 84, ¶ 3, 102 P.3d 670, 674.

¶ 7 LaSalle contends the late fee provision applies to the *entire balance* because, after default, the entire balance was due, but not paid. Under § 10(a)(i) of the Mortgage, the lender may "declare the entire Debt to be immediately due and payable" upon default. Likewise, under § 8.2.1 of the Loan Agreement, the lender may declare the entire principal amount due after default.

¶ 8 LaSalle then contends that because § 2.5.3 of the Loan Agreement provides for a 5% late payment fee on 'sums due', the entire default amount was subject to a late payment charge:

> 2.5.3 **Late Payment Charge.** If any Principal, interest *or other sum due* under any Loan Document is not paid by borrower on or before the date on which it is due, borrower shall pay to Lender upon demand an amount equal to ... 5% of such unpaid sum ...

(Emphasis added.) The purpose of the late payment charge is *"to defray the expense incurred by Lender in handling and processing such delinquent payment* and to compensate Lender for the loss of the use of such delinquent payment." Loan Agreement, § 2.5.3 (Emphasis added).

¶ 9 The Loan Agreement also allows, under § 2.2.2, the lender to be compensated through charging a higher interest rate if the borrower breaches the agreement through default. In fact, Shepherd Mall paid LaSalle $556,378.48 "default interest." Shepherd Mall contends that if LaSalle also received $1,375,000.00 late charge on the amount due after default, such would constitute unconscionable "double compensation."

¶ 10 LaSalle contends, to the contrary, that 5% late fee provisions are valid and *enforceable.*[2] In *K.I.D.E. Associates, Ltd. v. Garage Estates Co.,* 280 A.D.2d 251, 720 N.Y.S.2d 114 (N.Y.A.D. 1 Dept.2001), the Court upheld a 5% late charge *per month* on the overdue amount but did *not* address whether the fee may be charged after acceleration. In *Basciano v. Toyet Realty Corp.,* 167 A.D.2d 203, 561 N.Y.S.2d 252 (N.Y.A.D. 1 Dept.1990) the Court upheld late charges *during the six month time period* between the note's maturity and acceleration. At most, these cases reveal that in some circumstances, *prior* to acceleration, a 5% late fee is permissible. However, the issue before us pertains to assessment of a late charge *after* acceleration.

¶ 11 In *Centerbank v. D'Assaro,* 158 Misc.2d 92, 600 N.Y.S.2d 1015 (N.Y.Sup.1993) the lender accelerated a note, charged "default interest" and sought to impose late fees. The court disallowed late fees *after* default because the default interest compensated the lender for damages *after* acceleration. *Centerbank v. D'Assaro,* 600 N.Y.S.2d at 1018. Further, it is *"inconsistent* to allow a lending institution to accelerate a note, thereby denying the debtor the right under the mortgage note to make monthly installments" and still charge a late fee. *Id.,* at 1017 (Emphasis

---

2. The Promissory Note and Loan Agreement provide they are to be construed under New York law, and the Mortgage provides that Oklahoma law governs.

added). Other courts similarly recognize that the right to charge late fees ceases upon acceleration because monthly payments are not due after acceleration, so the lender no longer incurs expenses in processing delinquent payments.[3]

¶ 12 In the present case, Shepherd Mall not only paid default interest, but also paid LaSalle $22,851.00 for attorney fees and expenses. We are persuaded by the legal reasoning of the cases that hold late fees serve the limited purpose of compensating lenders "for administration of late payments *prior to* acceleration ..." *TMG Life Ins. Co. v. Ashner*, 21 Kan.App.2d 234, 898 P.2d 1145, 1162 (1995). Further, disallowing excessive compensation for late payments is consistent with the law in Oklahoma.[4] *Sun Ridge Investors, Ltd. v. Parker*, 1998 OK 22, 956 P.2d 876.

¶ 13 LaSalle further argues that the late payment charge must be enforced because it constitutes valid liquidated damages. It is well established that parties to a contract may agree, in advance, to set the amount of damages in the event of a breach. Liquidated damage provisions are " 'an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement.' " *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 393 N.Y.S.2d 365, 368, 361 N.E.2d 1015 (1977).

¶ 14 However, liquidated damages will only be enforced if "the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 393 N.Y.S.2d at 369, 361 N.E.2d 1015. The Oklahoma Supreme Court has also held that the sum stipulated must be a "reasonable pre-breach estimate of the

probable loss" and that the damages caused by the breach must be "difficult or impossible to estimate accurately." *Sun Ridge Investors, Ltd. v. Parker*, ¶ 8 at 878. In *Vernitron Corp. v. CF 48 Assocs.*, 104 A.D.2d 409, 478 N.Y.S.2d 933, 935 (N.Y.A.D. 2 Dept.1984), the court held that "... defaults such as late payment of rent is clearly readily ascertainable and is inappropriate for application of liquidated damages." *See also, Sun Ridge Investors, Ltd. v. Parker*, ¶ 13 at 879.

¶ 15 Further, in order to be enforced, the amount of liquidated damages must not be an excessive amount. *Sun Ridge Investors, Ltd. v. Parker*, ¶ 13 at 878, 879.

> It is plain that a provision which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable.... A liquidated damage provision has its basis in the principle of just compensation for loss.... A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation....

*Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 393 N.Y.S.2d at 369, 361 N.E.2d 1015 (citations omitted). In sum, when the actual loss is susceptible of calculation and the liquidated damage clause requires payment of an amount that is plainly disproportionate to the loss, the clause will not be enforced. *Evangelista v. Ward*, 308 A.D.2d 504, 764 N.Y.S.2d 705, 706 (N.Y.A.D. 2 Dept.2003).

¶ 16 In the present case, LaSalle charged, and Shepherd Mall paid, interest at the "default rate" for the approximate four month period between default and settlement, plus attorney fees and expenses, totaling over

---

**3.** *See also, In re Tavern Motor Inn, Inc.*, 69 B.R. 138 (D.Vt.1986) (prohibiting collection of late charges after default and acceleration); *In re White*, 88 B.R. 498, 505 (D.Mass.1988) (late charges allowed only until acceleration); *Rizzo v. Pierce & Associates*, 351 F.3d 791, 793, n. 1 (7th Cir.2003) (citing sixteen cases for the proposition that post-acceleration late charges are unenforceable); *Wells Fargo Bank Minnesota N.A. v. Guar-*

*nieri*, 308 B.R. 122, 127 (D.Conn.2004) (post-acceleration late payment charges unenforceable).

**4.** This Court will review the parties choice of law to determine whether it is contrary to the law or public policy of the State of Oklahoma.

$500,000.00 after default.[5] When coupled with a $1,375,000.00 late fee, the amount alleged to be owed to LaSalle is clearly excessive. *See, Sun Ridge Investors, Ltd. v. Parker,* ¶ 13 at 879.

¶ 17 Whether a contractual clause provides for enforceable liquidated damages, or an unenforceable penalty, is a matter of law.[6] We cannot conclude that under the facts of this case application of the 5% Late Payment Charge clause to the full amount due *after* default was (1) an estimate of the damages that would be sustained in the event of default and acceleration; (2) is in proportion to the damages sustained when the 5% fee is imposed on nearly the full principal balance of a multi-million dollar loan; or (3) is in proportion to damages sustained during this relatively short time period, particularly in light of the other amounts charged and paid after acceleration. Rather, we conclude application of the 5% late fee to the entire amount due after acceleration constitutes an unenforceable penalty.

¶ 18 The ruling of the trial court granting summary judgment to Shepherd Mall is AFFIRMED.

HANSEN, J., and BUETTNER, C.J., concur.

---

**5.** LaSalle also charged, and Shepherd Mall paid, other enumerated monetary damages allegedly sustained after the default, which also undermines interpreting the Late Payment Charge clause as a liquidated damage clause meant to serve as an advance settlement of the damages sustained by the breach in issue. *See, IPC Retail Properties, L.L.C. v. Oriental Gardens, Inc.,* 32 Kan.App.2d 554, 86 P.3d 543 (citing New York law).

**6.** *Vernitron Corp. v. CF 48 Associates,* 104 A.D.2d 409, 478 N.Y.S.2d 933, 935 (N.Y.A.D. 2 Dept. 1984).